UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

GARY COX, 11-R-0922,

                           Plaintiff,


v.                                                                    **REPORT
                                                                        AND
                                                                   RECOMMENDATION**

                                                                     13-CV-743A



SHAWN CRONIN, C. MARRA,
B. BERTRAM, and R. BURNS,

                           Defendants.
_____


## INTRODUCTION

        This case has been referred to me by Hon. Richard J. Arcara for supervision of pretrial

proceedings, including the preparation of a Report and Recommendation on dispositive motions.

[38].[1]  Plaintiff Gary Cox brought this action pursuant to 42 U.S.C. §1983, claiming that his civil

rights were violated when the defendants prevented him from attending meetings of Narcotics

Anonymous ("NA"). Before me is defendant's motion for Summary Judgment [41]. Oral

argument was held on July 28, 2015 [46]. For the following reasons, I recommend that the

defendant's motion be granted.

---

[1]   Bracketed references are to the CM/ECF docket entries.

**BACKGROUND**

During the relevant time period involved in this case, plaintiff Gary Cox was incarcerated at the Groveland Correctional Facility ("Groveland"). Statement of Undisputed Facts [41- 2], ¶1. At some point during his incarceration at Groveland, Cox began attending NA meetings. He alleges that prior to the regularly scheduled NA meeting on September 11, 2012, defendant C. Marra, the Alcohol and Substance Abuse Training Coordinator ("ASAT") at Groveland, directed that plaintiff meet with her in her office. Amended Complaint [26], ¶ 1.[2] According to plaintiff, defendant Mara stated that she had received 11 letters from other inmates who attended the NA meetings complaining about plaintiff's conduct during the meetings. Id. He asserts that she advised him that he could no longer attend the NA meetings. Id.

Plaintiff claims that he told defendant Marra that the NA meetings were "where he goes to practice his religious belief of spirituality". Id. Plaintiff alleges that he was advised by defendant Marra that they would discuss how long he would be banned from the NA meetings on September 12, 2012. Id. He stated that when he went to meet with her on September 12, 2012, he was told that she had already left for the day. Id. Plaintiff met with defendant Marra on September 24, 2012. Id. at ¶2. He stated that at this meeting, he was told that he could return to the NA meetings if he agreed not to speak Id. Plaintiff asserted that after he told defendant Marra that he could not accept such a condition, he was told that his ban from the meetings would continue. Id.

Plaintiff stated that he wrote letters to defendant Shawn Cronin, Deputy Superintendent of Programs, to complain that attending the NA meetings was how he worshiped God. [26-3, 26-5]. On September 26, 2012, defendant Cronin responded, stating: "Apparently, you do not

---

[2]   Plaintiff states that Offender Rehabilitation Counselor B. Bertram was also present at this meeting. Id. Other than her presence at this meeting, plaintiff does not attribute any other conduct to defendant Bertram.

understand the purpose of NA. NA is not a faith group or a religion. NA meetings are not places of worship. Ms. Marra is responsible for the operation of this group. She needs to be sure that any problems are addressed. I suggest you follow her direction, and use this time to assess your recovery". [26-4].

Plaintiff also filed a grievance regarding the alleged interference with his ability to attend the NA meetings. Amended Complaint [26], ¶ 3. On October 26, 2012, the grievance was denied by Superintendent Amoia. [26-6]. Plaintiff was advised that "[d]ue to your disruptive behavior in group, you were spoken to and advised to take the evening off. You were not ever removed from the AA/NA list, nor have you been prevented from continuing your participation in the AA/NA group". Id. Plaintiff appealed this decision to the Inmate Grievance Program. [26-7].

On March 20, 2013, the Inmate Grievance Program Central Office Review Committee ("CORC") stated that their investigation revealed that plaintiff was told to take the "evening off" but was not told that he could not return. [26-8]. CORC stated that plaintiff had chosen not to attend any NA meetings since October 22, 2012, and consequently, on December 20, 2012 his name was removed from the callout. Id. Plaintiff was advised to request that his name be placed back on the callout. Id. CORC further advised plaintiff that "AA/NA is not a religious group". Id.

Plaintiff submitted statements from various inmates in support of his complaint. [26-9 - 26-12].  The statement by Anthony Edwards dated September 27, 2012, although submitted by plaintiff, appears to support defendants' representations as to what had transpired on September 11, 2012 and thereafter with respect to plaintiff's participation in the NA meetings. Edwards stated:

> I was told to inform [plaintiff] that Ms. Marra wanted to see him to discuss problems that seem to be causing other inmates not to attend the meetings. When [plaintiff] attended the meeting on the state, he was called to Ms. Marra's office to address this matter. At this point, [plaintiff] was told not to attend the meetings.

However, after I was informed that these two individuals had their discussion, I was now to inform [plaintiff] that he could return to the meetings. I was under the assumption that he was removed from the meetings on a final basis, but I was told to let him know that he could return, and that he was only removed for that night. At which time some time had passed before I knew to inform the said individual to return. And [plaintiff], from my understanding, was under the impression that he could no longer attend the AA/NA meetings. Since this incident, [plaintiff] has not attended any meetings.

[26-9].[3]

Plaintiff contends that his preclusion from the NA meetings violated his right to the free exercise of his religion under the New York State and United States constitutions. [26], at ¶7. Defendants move for summary judgment on the grounds that plaintiff cannot demonstrate a violation of his First Amendment rights, that any injury suffered by the plaintiff was *de minimus,* and that the defendants are entitled to qualified immunity. Defendants' Memorandum of Law [41-1].[4]

## ANALYSIS

### A.  Standard for Summary Judgment

Summary judgment is appropriate where there are no issues of material fact in dispute, and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. ("Rule") 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, (1986); Trans Sport, Inc. v. Starter Sportswear, Inc., 964 F.2d 186, 188 (2d Cir. 1992). The Court must draw all reasonable inferences in favor of the non-moving party and grant summary judgment only if no reasonable trier of fact could find in favor of the non-moving party.  See Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991);

---

[3]   Based upon this statement, it appears that as early as September 27, 2012, plaintiff was aware that he could return to the NA meetings. The statements from William Brinck, Jr. dated October 16, 2012 [26-10], Otis Brewer [26-11], and Anthony Ravarini [26-12] each relate only their hearsay understanding of the discussion between plaintiff and Marra and suggest that plaintiff was one of the more experienced members of the NA group.

[4]   Defendants also argue that plaintiff has failed to articulate sufficient personal involvement on the part of defendants Bertram and Burns. Id.  p. 12.

Howley v. Town of Stratford, 217 F.3d 141 (2nd Cir. 2000). However, the non-moving party must, "demonstrate to the court the existence of a genuine issue of material fact." Lendino v. Trans Union Credit Information, Co., 970 F.2d 1110, 1112 (2d Cir. 1992). A fact is material: "when its resolution would 'affect the outcome of the suit under the governing law' and a dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party". General Electric Company v. New York State Department of Labor, 936 F.2d 1448, 1452 (2d Cir. 1991).

"The non-moving party must come forward with enough evidence to support a jury verdict . . . and the . . . motion will not be defeated merely . . . on the basis of conjecture or surmise." Trans Sport, 964 F.2d at 188. If undisputed material facts are properly placed before the court by the moving party, "those facts will be deemed admitted, unless they are properly controverted by the non-moving party". Glazer v. Formica Corp., 964 F.2d 149, 154 (2d Cir. 1992). The Court's responsibility in addressing a summary judgment motion is identifying factual issues, not resolving them. *See* Burger King Corp. v. Horn & Hardart Co., 893 F.2d 525, 528 (2d Cir. 1990). However, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party". Nippon Fire & Marine Ins. Co., Ltd. v. Skyway Freight Systems, Inc., 235 F.3d 53 (2d Cir. 2000).

## B.  Constitutional Right to Attend NA Meetings

Generally, prison inmates have no constitutional right to attend rehabilitative programs. The Supreme Court has held that inmates have no due process rights to attend rehabilitative programs. Moody v. Daggett, 429 U.S. 78, 88 n. 9 (1976) (prisoners have no due process protection with respect to their eligibility to participate in specific rehabilitation programs); *see also* Hoban v. California Department of Corrections, 2010 WL 5136026, *2 (E.D. Cal. 2010)

(prison inmates do not have a constitutional right to participate in AA or NA rehabilitative programs).

Similarly, the Eighth Amendment does not require that inmates be provided access to rehabilitative programming. Graham v. Fortier, 2015 WL 7077343, *9 (D.N.H. 2015) (Eighth Amendment does not require that inmates be provided access to AA programming). *See also* Fiallo v. de Batista, 666 F.2d 729, 730-31 (1st Cir.1981) (claim of right to participate in drug treatment programs rejected, there being no authority for the proposition that a prison inmate has a federal constitutional right to rehabilitation); Morales Montáñez v. Puerto Rico, 2009 WL 1617929, *5 (D.P.R. 2009) ("there is no federal constitutional right to rehabilitative training or treatment and as a result there is no violation of [plaintiff's] civil rights based upon such a constitutional right").

Here, plaintiff is claiming a First Amendment right to attend NA meetings. Although plaintiff admits that NA "is not a religion" (Plaintiff's Response to Motion for Summary Judgment [43], p.1), he contends that NA meetings have been held to be "religious" and that he has adopted it as his religion. Id. Plaintiff's claim in this regard appears to be one of first impression.

The First Amendment[5] provides, in part, that "Congress shall make no law respecting an establishment of religion [the Establishment Clause], or prohibiting the free exercise thereof" [the Free Exercise Clause]. Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S.

---

[5]    Plaintiff cites to both the New York State Constitution and the United States Constitution in support of his free exercise claim. Amended Complaint [26], p. 4.  Generally, the New York Constitution's free exercise protections are coextensive with those provided in the federal Constitution. Bloomingburg Jewish Educ. Ctr. v. Vill. of Bloomingburg, N.Y., 2015 WL 3604300, *15 (S.D.N.Y. 2015). See also In re Miller, 252 A.D.2d 156, 684 N.Y.S.2d 368, 370-71 (1998) (analyzing free exercise claim under the New York Constitution based on federal case law and noting that "[t]he Court of Appeals has not definitively stated whether the scope of that provision is coextensive with the Free Exercise Clause of the First Amendment of the U.S. Constitution"). In any event, there is no private right of action for violations of the New York State Constitution where alternative remedies exist under §1983. Sherman v. Town of Chester, 2015 WL 1473430, *14 (S.D.N.Y. 2015).

520, 531, (1993); *see also* <u>Congregation Rabbinical College of Tartikov, Inc. v. Village of Pomona</u>, 2015 WL 5729783, \*46 (S.D.N.Y. 2015). The Free Exercise Clause applies to any belief that a prisoner "sincerely holds" and that "is religious in nature". <u>Ford v. McGinnis</u>, 352 F.3d 582, 590 (2d Cir.2003). There is no requirement that the belief be objectively consistent with the teachings of a particular religious sect. <u>Id</u>. at 588–90.

Cases discussing the First Amendment implications of such programs are typically in the context of whether it is a violation of the Establishment Clause *to compel* an inmate to participate in an AA, NA or Twelve Step program as a condition of their parole or incarceration. Some AA, NA or Twelve Step programs have a substantial religious component. For example, in <u>Warner v. Orange County Department of Probation</u>, 115 F.3d 1068, 1075 (2d Cir.1997), the Second Circuit held that the "A.A. program to which Warner was exposed had a substantial religious component. Participants were told to pray to God for help in overcoming their affliction. Meetings opened and closed with group prayer". Thus, the court in <u>Warner</u> determined that plaintiff's First Amendment rights were violated when he was compelled to participate in the program. <u>Id</u>., at 1077.

Since <u>Warner</u>, many AA, NA and Twelve Step programs have removed overt references to God and prayer, to avoid running afoul of the Establishment Clause. In <u>Kreuter v. Reuter</u>, 2002 WL 31946715, \*9 (E.D.N.Y. 2002) <u>aff'd</u>, 75 F. App'x 55 (2d Cir. 2003), the court distinguished <u>Warner</u> and held:

> Here, Plaintiff does not allege that she was forced to pray to God or to acknowledge a particular God. Instead, she argues that other Twelve Step "concepts" were forced upon her. However, the Second Circuit's holding in <u>Warner</u> is that prayer and reference to God in AA sessions are religious activities for purposes of the Establishment Clause. Plaintiff asks this Court to extend that ruling to statements relating to being addicted and powerless over alcohol. While acknowledging addiction and lack of control over alcohol is one of the Twelve Steps, I find there is nothing religious about these statements.

*See also* <u>Gray v. Johnson</u>, 436 F. Supp. 2d 795, 798 (W.D. Va. 2006) (substance abuse program

that made AA and/or NA participation optional, removed any religious references from

inspirational readings, separated religious library materials from secular ones, and established a

rule allowing inmate participants to "express *their* religious beliefs" so long as they did not

"attempt[ ] to impose [their] belief on others" did not run afoul of the First Amendment).

       Neither party has cited, and I have not found, any authority stating that an individual has

a constitutional right to attend an AA, NA or Twelve Step program, or that the interference with

attendance to such programs would constitute a violation of the Free Exercise Clause of the First

Amendment.  The Second Circuit's decision in <u>Cox v. Miller</u>, 296 F.3d 89 (2nd Cir. 2002) has

perhaps the most comprehensive discussion of the extent to which such programs constitute a

"religion". There, the court held that a murder confession made by an individual in the context of

an AA program need not be suppressed pursuant New York's "cleric-congregant privilege". <u>Cox</u>,

296 F.3d at 111.

       In <u>Cox</u>, after a night out drinking with his friends on December 30, 1988, Cox attempted

to drive home but veered off the road and crashed into a guard rail. He decided to walk to his

home where he lived with his parents. Along the way he passed his childhood home, which his

parents had sold years earlier to a married couple. Still severely intoxicated, Cox broke into the

home by smashing a window, picked up a knife from the kitchen, went into the new owners'

bedroom and killed them. He then went home and fell asleep. The murder victim's bodies were

found a couple days later, however, no suspects were identified. Cox later testified that he

learned of the murders while watching the evening news. <u>Id</u>. at 93.

       In the spring of 1990, following another alcohol-induced blackout, Cox began to attend

AA meetings. <u>Id</u>. at 94. As part of the Fourth and Fifth steps of the Twelve-Step Program, Cox

began to recall the events of December 30, 1988, and in late November 1990 told his then-girlfriend that he thought he had murdered the couple. Id. at 95. He repeated this confession to several other AA members between 1990 and 1991. Id. In 1993, Cox also told his apartment roommates of the killings. Id. at 96. In May 1993, one of Cox's roommates conveyed to the police what Cox had told her. Id.  The police eventually obtained statements from the various AA members to whom Cox had confessed. Id.

Cox was subsequently indicted for the murders. Counsel moved to suppress Cox's statements on the ground that they were privileged communications made among AA members. The pretrial motion was denied. Id. at 97. This issue was raised upon appeal, but summarily rejected without discussion. Id. Cox then filed a federal habeas corpus petition. Id. The District Court granted habeas corpus relief, finding that Cox's statements should have been suppressed pursuant to New York's cleric-congregant privilege, reasoning that since the Second Circuit had held that AA was a religion for purposes of the Establishment Clause, the cleric-congregant privilege would apply to communications made between AA members. Id. at 98

On appeal, the Second Circuit acknowledged that "when engaging in Establishment Clause analysis *in certain settings* we must treat AA the same as we would a group or organization that is a 'religion' in the popular sense because some of AA's activities and modes of expression are religious in nature". Id. at 109 (emphasis added).  With respect to the privilege issue, after discussion of the historical First Amendment analysis relating to such programs, the court stated that it was "not certain whether we would treat AA the same as we treat traditional religions in this context", but determined that it need not address the question because the court found that Cox's statements did not qualify for the privilege even if AA were to be treated the same as a traditional religion. Id. at 109-10.

Thus, it is not well-settled that groups such as AA, NA and other Twelve Step Programs are to be treated as "religions" for purposes of constitutional analysis in all contexts of the First Amendment. Further, even for Establishment Clause purposes, whether a group qualifies for Establishment Clause treatment depends upon the extent to which their meetings are imbued with religious content.  In this case, the defendants argue that the NA program at issue does not implicate the free exercise of religion. Defendants' Memorandum of Law [41-1], p. 4. NA describes itself as follows:

> "NA is a nonprofit fellowship or society of men and women for whom drugs had become a major problem. We are recovering addicts who meet regularly to help each other stay clean. This is a program of complete abstinence from all drugs. There is only one requirement for membership, the desire to stop using. We suggest that you keep an open mind and give yourself a break. Our program is a set of principles written so simply that we can follow them in our daily lives. The most important thing about them is that they work.
>
> There are no strings attached to NA. We are not affiliated with any other organizations. We have no initiation fees or dues, no pledges to sign, no promises to make to anyone. *We are not connected with any political, religious, or law enforcement groups, we are under no surveillance at any time. Anyone may join us, regardless of age, race, sexual identity, creed, religion, or lack of religion.*"

Statement of Undisputed Facts [41-6], Exhibit B (emphasis added). Further, the NA materials state that: "Narcotics Anonymous itself is a non-religious program of recovery; each member is encouraged to cultivate an individual understanding-religious or not-of the spiritual principles and apply these principles to everyday life". Id., Exhibit C.

As noted above, plaintiff admits that NA is not a religion (Plaintiff's Response to Motion for Summary Judgment [43], ¶4), that NA is not affiliated with any religious groups, and that anyone may join regardless of "age, race, sexual identity, creed, religion, or lack of religion" Id., ¶ 9.  However, plaintiff notes that the "Basic Text" of NA states that: "Based on our experience, we believe that every addict, even the potential addict, suffers from an incurable disease of body,

mind and spirit. We were in the grip of a hopeless dilemma, the solution of which was spiritual in nature. Therefore, [the text] will deal with spiritual matters". Id. at ¶5.

Plaintiff argues that even though NA calls itself a non-religious program, "in actuality, what is being talked about is the individuals who practice the program and their personal choices. The hint of the program being viewed as religious comes from the invocation of God in the heart of the program, Twelve Steps in the Twelve Traditions, which is practice best by those who find a 'Higher Power', and that power is later referred to as God". Id. at ¶10.

Among the materials submitted by the defendants in support of this motion is an "NA White Booklet" [41-6], stating that successful participants have "admitted that we were powerless over our addiction . . . and came to believe that a Power greater than ourselves could restore us to sanity . . . made a decision to turn our will and our lives over to the care of God *as we understood him* (emphasis in original) . . . admitted to God, to ourselves, and to another human being the exact nature of our wrongs . . . were entirely ready to have God remove all these defects of character . . . humbly asked Him to remove our shortcomings . . . sought through prayer and meditation to improve our conscious contact with God *as we understood Him* (emphasis in original), praying only for knowledge of His will for us and the power to carry that out. Having had a spiritual awakening as a result of these steps, we tried to carry this message to addicts, and to practice these principles in all our affairs". Id., p. 3 of 14.

The record does not contain a detailed description of how the NA meetings at Groveland are conducted. Therefore, the extent to which references to God are part of the NA program as it is practiced at Groveland is not clear, preventing further analysis of the Groveland NA program under either clause of the First Amendment. However, since I conclude that defendants are entitled to qualified immunity with respect to plaintiff's First Amendment claim (see discussion

infra), I need not determine the extent to which the NA meetings at Groveland are infused with religious content, or whether NA meetings constitutes a "religion" for purposes of the Free Exercise Clause of the First Amendment.[6]

## C.  Qualified Immunity

Even if plaintiff could establish that the NA program as it is practiced at Groveland was closer to the program in Warner than in Kreuter or Johnson, the defendants would still be entitled to qualified immunity with respect to the First Amendment claim. Public officials sued in their individual capacity who are performing discretionary functions are entitled to qualified immunity so long as "their conduct does not violate clearly established . . . rights of which a reasonable person would have known". Vincent v. Yelich, 718 F.3d 157, 166 (2d Cir.2013).  "A government official is entitled to qualified immunity from suit for actions taken as a government official if (1) the conduct attributed to the official is not prohibited by federal law, constitutional or otherwise; (2) the plaintiff's right not to be subjected to such conduct by the official was not clearly established at the time of the conduct; or (3) the official's action was objectively legally

---

[6]    The defendants assert that plaintiff was precluded from attending the NA meetings, for a limited time, due to disruptive behavior which resulted in letters from other inmates complaining about plaintiff's conduct. Statement of Undisputed Facts [41-2], ¶¶18-20. Plaintiff states that he was unaware of the complaints because defendants did not allow him to review the purported letters. Plaintiff's Response to Motion for Summary Judgment [43], ¶18.  The letters are not in the record. Plaintiff's deposition testimony reflects that some complaints involved plaintiff's opinion that it was a violation of NA practices to take medications even if medically prescribed. Affidavit of Ryan Belka [41-3], Exhibit A, p. 25. He was told he was being a "bully and an asshole". Id. at p. 28.  It is well settled that a prisoners' constitutional rights may be restricted by the fact of confinement and the needs of the penal institution. Jones v. North Carolina Prisoners' Labor Union, 433 U.S. 119, 125 (1977). An inmate is not entitled to follow every aspect of his religion; the prison may restrict the inmate's practices if its legitimate penological interests outweigh the prisoner's religious interests. Kaufman v. McCaughtry, 419 F.3d 678, 683 (7th Cir.2005). Disruptive behavior may serve as a legitimate basis to preclude attendance at a religious service.  Gillis v. Skinner, 2013 WL 1451366, *2 (W.D.La.2013) report and recommendation adopted, 2013 WL 1451364 (W.D. La. 2013) (inmate's preclusion due to disruptive behavior served the rational and legitimate penological interest in maintaining security and order in the prison). Because defendant's are entitled to qualified immunity any question of fact relating to plaintiff's conduct at the meetings is immaterial to the resolution of this motion.

reasonable in light of the legal rules that were clearly established at the time it was taken." <u>Cuoco v. Moritsugu</u>, 222 F.3d 99, 109 (2d Cir.2000).

The qualified immunity inquiry "turns primarily on objective factors." <u>Id</u>. "A right is clearly established when the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right". <u>Jackler v. Byrne</u>, 658 F.3d 225, 242 (2d Cir.2011) *quoting* <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987).  Qualified immunity "provides ample protection to all but the plainly incompetent or *those who knowingly violate the law*". <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986) (emphasis added).

In light of the unsettled law regarding the circumstances under which programs such as NA are to be treated as a "religion" for constitutional analysis, the defendants are entitled to qualified immunity in this case. As discussed above, plaintiff's claim that he is entitled to attend the NA program pursuant to his First Amendment rights appears to be a case of first impression. Neither party has cited authority stating that an individual has a constitutional right to attend an AA, NA or Twelve-Step program, or that the interference with attendance would constitute a violation of the Free Exercise Clause of the First Amendment.

To the contrary, as determined in <u>Moody</u>, <u>Graham</u>, and <u>Fiallo</u>, claims of a constitutional right to attend such programs have been rejected under both Due Process and Eighth Amendment analysis. Further, as discussed in <u>Kreuter</u>, <u>Johnson</u>, and <u>Cox</u>, it is not well settled that AA, NA and Twelve-Step rehabilitative programs are to be treated as constituting a "religion" under the First Amendment for all purposes. Notwithstanding the spiritual aspect of the NA meetings, plaintiff acknowledges that NA is "not a religion". Plaintiff's Response to Motion for Summary Judgment [43], ¶4.  Since there does not appear to be a prior instance in which an individual's right to attend such a program was held to be constitutionally protected under the First

Amendment, I cannot conclude that the defendants would have reasonably understood that they were violating plaintiff's rights by precluding him from attending the NA meetings.

Because I find that the defendants are entitled to qualified immunity with respect to his federal claims, I need not address the defendants' arguments that plaintiff suffered only *de minimus* injury, or that there was a lack of personal involvement on the part of certain defendants.

Upon consideration of judicial economy, convenience, fairness and comity, to the extent that the plaintiff's claims in this case are based upon §290 of the Executive Law, New York Correctional Law §610, or "the New York Codes, Rules and Regulations" (Amended Complaint [26], p. 3), I recommend that the court decline to exercise pendent jurisdiction over any state law claims.[7] *See* Birch v. Pioneer Credit Recovery, Inc., 2007 WL 1703914 (W.D.N.Y. 2007) ("In the interest of comity, the Second Circuit instructs that absent exceptional circumstances, where federal claims can be disposed of pursuant to Rule 12(b)(6) or summary judgment grounds, courts should abstain from exercising pendent jurisdiction") *quoting* Walker v. Time Life Films, Inc., 784 F.2d 44, 53 (2d Cir.1986).

### CONCLUSION

For these reasons, I recommend that defendants' motion for Summary Judgment [41] be granted.  Unless otherwise ordered by Judge Arcara, any objections to this Report and Recommendation must be filed with the clerk of this court by April 4, 2016 (applying the time

---

[7]    The defendants' motion does not address the state law claims other than to note that "[a]lthough plaintiff passively mentions equal protection [under §290], NYS Corrections Law, and 'Codes, Rule, and Regulations" he does not provide any factual allegations which could be used to support such a claim. Furthermore, plaintiff has failed to allege any protected class or adverse action which befell him." Defendants' Memorandum of Law [41-1], p.2, n.1.

frames set forth in Rules 6(a)(1)(C), 6(d), and 72(b)(2)). Any requests for extension of this

deadline must be made to Judge Arcara. A party who "fails to object timely . . . waives any right

to further judicial review of [this] decision". <u>Wesolek v. Canadair Ltd.</u>, 838 F. 2d 55, 58 (2d Cir.

1988); <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider de novo arguments, case

law and/or evidentiary material which could have been, but were not, presented to the magistrate

judge in the first instance. <u>Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric

Co.</u>, 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local

Rules of Civil Procedure, written objections shall "specifically identify the portions of the

proposed findings and recommendations to which objection is made and the basis for each

objection . . . supported by legal authority", and must include "a written statement either

certifying that the objections do not raise new legal/factual arguments, or identifying the new

arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply

with these provisions may result in the district judge's refusal to consider the objections.

Dated: March 18, 2016

<u>/s/ Jeremiah J. McCarthy</u>
JEREMIAH J. MCCARTHY
United States Magistrate Judge